UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL J. TUTUNGIAN,

    Plaintiff,

       v.                            CIVIL ACTION NO. 25-12516-MPK

AVERHEALTH INC., et al.,

    Defendants.

ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*
AND REVIEW OF THE COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2)
January 20, 2026

KELLEY, U.S.M.J.

Daniel J. Tutungian, who is representing himself, has filed a civil complaint concerning his divorce proceeding in the Norfolk County Probate and Family Court ("Family Court"). *See* #1 ("Compl."). He has also filed a motion for leave to proceed *in forma pauperis* (#2) and a motion for service by the United States Marshals Service (#3). For the reasons set forth below, the court grants the motion to proceed *in forma pauperis*, denies without prejudice the motion for service by the United States Marshals Service, and directs Tutungian to file an amended complaint if he wishes to proceed with this action.

**I.**    **Motion for Leave to Proceed in Forma Pauperis**

On review of Tutungian's motion for leave to proceed *in forma pauperis*, the court concludes that Tutungian has adequately shown that he is unable to pay the filing fee. Accordingly, the motion is GRANTED.

## II. <u>Review of the Complaint</u>

When a plaintiff is proceeding *in forma pauperis*, the court may conduct a preliminary review of the complaint and dismiss any claims that are malicious or frivolous, fail to state a claim on which relief may be granted, or seek monetary damages from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). In addition, because "[f]ederal courts are courts of limited jurisdiction" and cannot act in the absence of subject matter jurisdiction, "they have a sua sponte duty to confirm the existence of jurisdiction in the face of apparent jurisdictional defects." *United States v. Univ. of Mass., Worcester*, 812 F.3d 35, 44 (1st Cir. 2016). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). In conducting this preliminary review, the court construes Tutungian's complaint liberally because he is proceeding pro se. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

### A. <u>Complaint</u>

Tutungian brings this action against his ex-wife, Brigid, and her legal team: attorney Brian Burke and paralegal Karen Gronoos; Averhealth, Inc., "a private drug-testing contractor for the Massachusetts Trial Courts"; and four employees of the Family Court: Goro Matsuo, Assistant Judicial Case Manager; Theresa Plante, Chief Probation Officer; Kathleen Callahan, Probation Officer/Supervisor; and Scott Goldberg, Probation Officer/Investigator. Compl. ¶¶ 7-14. Tutungian summarizes his claims as follows:

> This action arises from a coordinated scheme by Averhealth, employees of the [Family Court], Plaintiff's ex-wife, her counsel, his paralegal, and a court staffer to fabricate, perpetuate, and weaponize false drug test results and inflammatory filings against Plaintiff.
>
> Through false evidence, docket manipulation, ex parte collusion, vexatious motions, and dissemination of intimate photographs of Plaintiff and his minor child,

2

> Defendants deprived Plaintiff of his constitutional rights, damaged his parental relationship, and inflicted severe emotional and psychological harm.

*Id.* ¶¶ 1-2.[1] The complaint is in ten counts. Counts I and II are claims under 42 U.S.C. § 1983 ("§ 1983"). (Compl. ¶¶ 38-41.) The remaining claims arise under state law. *Id*. ¶¶ 42-57.

In Count I, for "Due Process Violations," Tutungian alleges that "Defendants Averhealth, Plante, Callahan, Goldberg, and Matsuo fabricated evidence, misrepresented exculpatory proof, and manipulated docketing, depriving Plaintiff of liberty and parental rights without due process." *Id.* ¶ 39. According to Tutungian, in September 2022, Averhealth collected a hair follicle sample from him and tested it. Averhealth reported a positive cocaine result using a threshold standard "five times lower than . . . industry standard. *Id.* ¶ 17. Tutungian asserts that the results were unreliable because, *inter alia*, "[c]hain of custody was broken, the test lacked confirmation, and Plaintiff's urine screen that same week was negative." *Id*. ¶ 18. Tutungian alleges that he "immediately self-paid" for a re-test by a different lab, Omega, "which returned negative for all substances using proper standards." *Id.* ¶ 20. Omega's report identified the "Requesting Agency" as the Family Court, *see id*. ¶ 21, and, according to Tutungian, Goldberg "falsely described the Omega test as 'voluntary/self-pay' to minimize its weight," and Callahan and Plante "refused to correct the record, with Plante admitting 'drug tests are never removed' even when wrong." *Id.* ¶¶ 22, 23. Tutungian also claims that "Matsuo, acting outside any judicial role, signed and back-dated orders, withheld filings from the docket, [and] openly coached Burke on scheduling strategy." *Id*.

---

[1] The court takes judicial notice that the publicly available online docket of the Family Court indicates the judgment in Tutungian's divorce case was made on October 3, 2025. *See Tutungian v. Tutungian*, Dkt. No. NO22D0716DR (Norfolk Cnty. Probate & Family Ct. Oct. 3, 2025). In this judgment, the court orders that Tutungian "shall continue to have sole legal custody" and "sole physical custody of the child." *Id.* at 20. The docket of this action is available through https://www.masscourts.org.

¶ 25. Tutungian was "repeatedly denied the same email/e-filing access Matsuo gave to Burne." *Id.* ¶ 26.

In Count II, for "Equal Protection," Tutungian alleges: "By operating a dual lab system (Averhealth vs. Omega), Defendants subjected parents to unequal treatment depending on ability to pay for reliable testing." *Id.* ¶ 41. The court presumes that by "Defendants" in Count II, Tutungian is referring to "Defendants Averhealth, Plante, Callahan, Goldberg, and Matsuo," as named in Count I.

**B.** **Discussion**

A federal district court may exercise "original" subject matter jurisdiction over claims (1) arising under federal law (federal question subject matter jurisdiction), *see* 28 U.S.C. § 1331; and (2) between parties who are "citizens" of different states where the claim is worth more than $75,000 (diversity subject matter jurisdiction), *see* 28 U.S.C. § 1332. If a complaint includes a claim for which the court has original subject matter jurisdiction, the court has discretion to exercise "supplemental" subject matter jurisdiction over any related claims that do not fall within the court's original jurisdiction. *See* 28 U.S.C. § 1367(a).

For purposes of diversity subject matter jurisdiction, "a person is a citizen of the state in which he is domiciled." *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008). Where a party seeks to invoke a federal district court's diversity subject matter jurisdiction, the parties must be of complete diversity. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Complete diversity does not exist where any defendant is a citizen of the same state as the plaintiff. *See id.*

Tutungian is a resident of Massachusetts. Compl. ¶ 6. In the complaint, he asserts federal question subject matter and supplemental jurisdiction. *Id*. ¶¶ 3-4. Moreover, he does not state where any of the eight defendants are domiciled. Four of the defendants are employees of the

4

Family Court, and from the complaint, the court has no basis to conclude that all four, notwithstanding that they work for the Family Court, are not "citizens" of Massachusetts. Thus, the court only has original subject matter jurisdiction over this action if Tutungian sufficiently pleads a claim arising under federal law.

A complaint must include a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that a the "short and plain" statement of the claim must provide a defendant with "fair notice of what the . . . claim is and the grounds upon which it rests" (alteration in original) (citation omitted)). To state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In considering whether a claim meets this standard, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). The plausibility standard is not as onerous as a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Here, Tutungian's complaint does not show that Averhealth is subject to liability under § 1983. Section 1983 provides a right of action against a defendant who, while acting under color of state law, violated the federal rights of the plaintiff. 42 U.S.C. § 1983. A private party cannot be held liable under § 1983 unless their conduct can be "fairly attributable to the State." *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 543-44 (1st Cir. 2021) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). While Tutungian does allege that the Family Court uses the services of Averhealth to conduct drug testing, such allegation alone does not show that Averhealth's conduct can be fairly attributable to the Commonwealth under the alleged circumstances. *See*, *e.g.*, *Jones v. Nielsen*, No. 2:24-cv-00365-RJS, 2024 WL 4752261, at *4 (D. Utah Nov. 12, 2024) (finding that Averhealth was not a "state actor" simply because "it acted pursuant to a contract with [the state's Division of Child and Family Services] to provide court-ordered drug testing").

Tutungian has not alleged plausible § 1983 claims against the state court employees, but for a different reason.  He alleges that Plante, Callahan, Goldberg and Matsuo violated his due process rights by "fabricat[ing] evidence, misrepresent[ing] exculpatory proof, [or] manipulat[ing]" the docket. Compl. ¶ 39. However, the complaint does not contain any non-conclusory allegations which could present more than a "sheer possibility" that Plante, Callahan, Goldberg and Matsuo acted unlawfully. For example, Goldberg did not "*falsely* describe[] the Omega test as 'voluntary/self-pay'," *see id*. ¶ 22, because, by Tutungian's own admission, the test

was voluntary, and he did pay for it, *see id*. ¶ 20.[2, 3] Callahan and Plante did not "manipulate" the docket by keeping the Averhealth test results on the docket. In fact, they would have been remiss if they had removed the results of a court-ordered drug test from the docket. Any determination of the import and reliability of the results was left to a judicial officer.

In addition, to the extent that Plante, Callahan, Goldberg and Matsuo were "'exercis[ing] a discretionary judgment' in helping to resolve disputes between parties" or 'carr[ying] out the orders of the appointing judge,'" they are entitled to quasi-judicial immunity for such acts. *Suny v. KCP Advisory Grp., LLC*, 152 F.4th 25, 30 (1st Cir. 2025) (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993); *Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989)).

If Tutungian's § 1983 claims are dismissed, there would not be a claim over which the court would have original subject matter jurisdiction. The case could be dismissed on that basis. Accordingly, if Tutungian wishes to proceed with this action, the court directs him to file an amended complaint that sufficiently pleads at least one claim over which the court may exercise original subject matter jurisdiction.

---

[2] That Omega's report identified the "Requesting Agency" as the Family Court, *see id*. ¶ 21, does not alter the court's analysis.

[3] Tutungian's apparent claim that his right to equal protection was violated because he had to pay out of pocket for an elective drug test is not plausibly alleged. *See generally San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 23-24, 29 (1973) ("at least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages"; there can be no equal protection violation when 'lack of personal resources has not occasioned an absolute deprivation of the desired benefit"); *see also United States v. Myers*, 294 F.3d 203, 209 (1st Cir. 2002) ("the appellant's indigency did not cause a complete deprivation of the right to counsel (and, therefore, no violation of the Equal Protection Clause exists"); *Edward B. v. Paul*, 814 F.2d 52, 56 (1st Cir. 1987) ("Here, the alleged classification based upon wealth makes recourse to the courts more difficult, but it does not absolutely deprive indigents of recourse. Therefore, the refusal to provide a free transcript does not affect a suspect class").

**III.     Conclusion**

In accordance with the foregoing, the court hereby orders:

1. The motion for leave to proceed *in forma pauperis* (#2) is GRANTED.

2. The motion for service by the United States Marshals Service (#3) is DENIED without prejudice. If the court later orders that summonses issue in this case, the court will also allow Tutungian to ask the agency to complete service with all costs to be advanced by the United States.

3. If Tutungian wishes to pursue this action, he must, within thirty-five (35) days, file an amended complaint in which he sufficiently pleads at least one claim over which the court may exercise original subject matter jurisdiction. If Tutungian does not follow this directive, the court may recommend to a District Judge that this action be dismissed, and that the dismissal be without prejudice as to the state law claims.

SO ORDERED.

    /s/M. Page Kelley
M. Page Kelley
United States Magistrate Judge